106 Cal.Rptr.2d 209 (2001)
88 Cal.App.4th 715
JOHN L., Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent;
The People, Real Party in Interest.
The People, Petitioner,
v.
The Superior Court of San Diego County, Respondent;
Matthew F., Real Party in Interest.
The People, Petitioner,
v.
The Superior Court of San Diego County, Respondent;
Jonathan G., Real Party in Interest.
Nos. D035995, D036142, D036290.
Court of Appeal, Fourth District, Division One.
April 25, 2001.
Review Granted July 18, 2001.
*211 Steven J. Carroll, Public Defender, Gary Nichols and Jo Pastore, Deputy Public Defenders, for Petitioner John L., and for Real Parties in Interest Matthew F. and Jonathan G.
Paul J. Pfingst, District Attorney, Thomas F. McArdle and Peter J. Cross, Deputy District Attorneys, for Petitioner and Real Party in Interest the People.
No appearance for Respondent.
*210 McDONALD, J.
On March 7, 2000, the voters approved an initiative measure designated as Proposition 21, which became effective on March 8, 2000. (Cal. Const., art. II, § 10, subd. (a).) Proposition 21 made numerous changes to the Penal Code and Welfare and Institutions Code relating to the adult *212 and juvenile justice systems. We here consider section 27 of that measure, which amended the provisions of Welfare and Institutions Code section 777 (new section 777).[1] New section 777 applies to hearings to modify dispositional orders to impose more restrictive custody for minors previously adjudicated as wards of the court. In relevant part, new section 777 reduces the burden of proof, permits the use of hearsay, and eliminates the necessity of a finding that the prior disposition was ineffective in rehabilitating the minor.[2]
In this proceeding, we decide whether new section 777 applies to juvenile probation revocation hearings in which the proposed revocation is based on conduct occurring after the effective date of Proposition 21 for a juvenile adjudicated a ward based on conduct occurring before the effective date of Proposition 21. The three juveniles in this proceeding argue that in these circumstances former section 777 must apply because ex post facto principles bar application of new section 777. The People argue that, if the conduct giving rise to the probation revocation hearing occurs after the effective date of Proposition 21, application of new section 777 does not violate the constitutional proscription against ex post facto laws.

I

BACKGROUND
Each of the three juveniles involved in this proceeding was declared a ward of the court pursuant to section 602 based on conduct occurring prior to March 8, 2000.[3] The court imposed less restrictive dispositional placements for each of them than the placements the People seek now to impose.[4]
*213 In each of the three cases, the People initiated proceedings under new section 777 alleging that the juveniles engaged in conduct after March 8, 2000, that violated the terms of their probation. In the matter involving John L., the trial court concluded ex post facto principles did not preclude application of new section 777 to the probation revocation proceeding; John L. challenges that ruling by petition for writ of mandate in case number D035995. In the matters involving Matthew F. and Jonathan G., a different trial court concluded ex post facto principles did bar application of new section 777 to the probation revocation proceedings; the People challenge those rulings by petitions for writs of mandate in case numbers D036142 and D036290, respectively. In each of the cases we issued orders to show cause, and the parties declined the opportunity for oral argument. We consolidated the cases for decision.

II

ANALYSIS

A. Legal Background

The core of ex post facto law is to bar application of laws that criminalize conduct that was not criminal when done, or increase punishment for a crime above the punishment the law specified at the time the crime was committed. Accordingly, a successful ex post facto claim requires a showing that the law operates retroactively by applying to conduct occurring before its enactment. (Johnson v. United States (2000) 529 U.S. 694, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (Johnson).))
In Calder v. Bull (1798) 3 U.S. (Dall.) 386, 1 L.Ed. 648, the court explained at page 390 that the constitutional ban against ex post facto laws prohibits four general categories of laws: (1) a law that makes criminal an action that was not criminal when done; (2) a law that aggravates a crime or makes it greater than it was when it was committed; (3) a law that increases the punishment for a crime after it was committed; and (4) a law that alters the legal rules of evidence and requires less or different evidence to convict the offender of a crime than the law required at the time the crime was committed.[5] Although the language of Collins v. Youngblood (1990) 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 created substantial doubt whether the fourth category remained viable for ex post facto purposes,[6] the recent decision in Carmell v. Texas (2000) 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577, hereafter Carmell clarified that the fourth category has not been eliminated as part of the ex post facto doctrine and remains a category of laws prohibited from operating retroactively. (Carmell, *214 supra, at pp. 514-515, 537-539, 120 S.Ct. at pp. 1623, 1635.)
The juveniles[7] principally argue that applying new section 777 to their probation revocation proceedings violates the fourth Calder category.[8] They argue that, at the time of their underlying offenses, a court could revoke probation only if a certain type and quantum of evidence was produced, and applying new section 777 to allow probation revocation on less or different evidence than the law required at the time of commission of the underlying offenses violates the fourth Calder category. Their contention relies on the analyses contained in three recent cases: Carmell, supra, 529 U.S. 513, 120 S.Ct. 1620; Johnson, supra, 529 U.S. 694, 120 S.Ct. 1795; and In re Melvin J. (2000) 81 Cal. App.4th 742, 96 Cal.Rptr.2d 917 (Melvin J.). We therefore examine the issues and holdings in those cases to determine their impact on the issues presented here.
In Carmell, the court analyzed whether applying an amended Texas statute to the defendant violated the fourth Calder category. The defendant was charged with a sexual offense, and the prior version of the Texas statute required corroboration of the testimony of a victim of a sexual offense if the victim was 14 years old or older at the time of the offense. The statute was amended, after the dates of some of the alleged offenses, to require corroboration only where the victim was 18 years old or older at the time of the offense. The victim in Carmell was over 14 but under 18 at the time of that set of offenses, and there was no corroboration as to those alleged offenses. The Carmell majority recognized that "`[t]he critical question [for an ex post facto violation] is whether the law changes the legal consequences of acts completed before its effective date.' [Quoting Weaver v. Graham (1981) 450 U.S. 24, 31, 101 S.Ct. 960, 67 L.Ed.2d 17.]" (Carmell, supra, at p. 520, 120 S.Ct. at p. 1626.) The majority found that the amendment reduced the amount of evidence needed for a finding of guilt, and concluded that if a prosecutor's case at the time of the commission of the offense would have been insufficient and the defendant would be entitled to an acquittal on the evidence, a change in the rules following the alleged commission of the offense to allow less evidence to convict the defendant violates ex post facto principles. (Id. at p. 530, 120 S.Ct. at p. 1631.)
In Johnson, the court did not discuss the fourth Calder category, but instead examined changes to a probation revocation statute that became effective after the date of the defendant's underlying offense. There, a defendant was convicted of a 1993 offense; he was sentenced to 25 months in prison to be followed by three years of supervised release, a form of probation. In 1996, while on supervised release, the defendant committed a new crime in violation of the terms of his supervised release; the court's 1996 order revoked his supervised release, returned him to prison for an 18 month term, and also imposed a new and additional 12-month term of supervised release following the new prison term. The statute in effect at the time of the underlying offense allowed a court to revoke a supervised release and return the defendant to prison for violating the terms of his supervised release but did not explicitly *215 authorize the court to impose a new and additional period of supervised release following reincarceration. However, the version of the statute in effect at the time of the 1996 probation violation and revocation was explicit: a court was authorized to revoke the supervised release, return the defendant to prison, and impose a new and additional period of supervised release to be served after release from the new period of incarceration.
The defendant's challenge to the 1996 order argued the court had no power under the old statute to order a new period of supervised release, and the new statute could not be applied to support the 1996 order without violating ex post facto principles. (Johnson, supra, 529 U.S. at p. 698, 120 S.Ct. at p. 1799.) The government argued the old statute applied and under the old statute the court had authority to order the new period of supervised release. The United States Supreme Court, synopsizing its holding, stated "The [government] argues that district courts had the power to [order a new period of supervised release] under the prior law, and that this cures any ex post facto problems. We agree with the Government as to the interpretation of prior law, and we find that consideration of the Ex Post Facto Clause is unnecessary." (Id. at pp. 695-696, 120 S.Ct. at p. 1798.)
The Johnson court expressly declined to examine whether applying the new statute would have violated ex post facto principles. However, because Johnson's discussion contains dicta that was cited by the Melvin J. court as the basis for its conclusion that application of new section 777 to probation revocation proceedings in a case in which the underlying offense was committed prior to March 8, 2000, could violate ex post facto principles, we examine this aspect of Johnson. The genesis of the Johnson dicta was that the United States Court of Appeals for the Sixth Circuit had agreed with Johnson's argument that the trial court had no power under the old statute to order a new and additional period of supervised release. However, the Court of Appeals nevertheless affirmed the 1996 order because it concluded the power granted a trial court under the new statute could be applied to Johnson without offending ex post facto principles. The Court of Appeals reasoned that application of the new statute was not retroactive because it imposed punishment for violating the terms of his supervised release, and therefore the new statute applied only to events or conduct occurring after the effective date of the statute. The United States Supreme Court, explaining why it would not adhere to the theory articulated by the Court of Appeals to affirm the sentence, stated:
"While this understanding of revocation of supervised release has some intuitive appeal, the Government disavows it, and wisely so in view of the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release. Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. [Citation.] Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties. [Citations.] ... We therefore attribute postrevocation penalties to the original conviction." *216 (Johnson, supra, 529 U.S. at pp. 698-702, [120 S.Ct. at pp. 1800-1801].)
The final sentence of the above-quoted language was pivotal to the decision in Melvin J. In Melvin J., all of the relevant events occurred prior to March 8, 2000: the juvenile committed the underlying offense, was declared a ward, was placed on probation, committed the offense that violated probation, and had his probation revoked during 1998. (In re Melvin J., supra, 81 Cal.App.4th at p. 745, 96 Cal. Rptr.2d 917.) The Melvin J. court first held that the procedure followed and the findings entered by the trial court when it entered its order revoking probation were erroneous under the statutory scheme in effect in 1998. However, because the same procedure and findings would have been proper under new section 777, which had become effective by the time of the appellate decision in Melvin J., the court examined whether on remand the trial court would be required to apply the old or the new section 777:
"If former Welfare and Institutions Code section 777, subdivision (a) governs any hearing on remand, the juvenile court will have to make the findings mandated by that section at a new hearing. If, however, the newly amended version of Welfare and Institutions Code section 777, subdivision (a), approved as part of Proposition 21, applies to any future hearing on remand we order, there are no further findings required for the juvenile court to make since it has already determined that a violation of a probation condition occurred. In that situation, any error that occurred at the original hearing would now be harmless in light of the new standard that would govern any new hearing in the case." (Id. at p. 757, 96 Cal.Rptr.2d 917.)
The Melvin J. court viewed the issue to be whether the new version of section 777 could be applied to a probation revocation hearing held after March 8, 2000, when it "relates to a minor who was made a ward of the court based on conduct that occurred before that date." (In re Melvin J., supra, 81 Cal.App.4th at p. 757, 96 Cal.Rptr.2d 917.) The Melvin J. court concluded the date of the original offense was the pivotal date for its ex post facto analysis and used the date of the original offense rather than the date of the probation violation conduct. It based its conclusion on Johnson's language that "postrevocation sanctions relate to the original offense for ex post facto purposes, and not to the date of the conduct alleged to constitute the basis for the revocation." (Melvin J., supra, at p. 757, fn. 6, 96 Cal. Rptr.2d 917.) After concluding that Johnson required use of the date of the original offense to analyze whether changes in probation revocation proceedings could be applied without violating ex post facto principles, the Melvin J. court then concluded Carmell precluded a court from applying the new version of section 777 to revoke probation for pre-Mareh 8, 2000, offenders. The Melvin J. court noted Carmell reaffirmed that laws altering the legal rules of evidence to receive less or different evidence than the law required at the time of commission of the offense to convict the offender cannot be applied to conduct that occurred prior to the effective date of the law. (Melvin J., supra, at p. 758, 96 Cal. Rptr.2d 917.) The court applied Carmell's rationale to the facts of Melvin J. and found that the new version of section 777, by deleting the requirement for certain findings and allowing probation to be revoked on less and different evidence than would have been required under the law in effect at the time of the original offense, could not be applied to the defendant in *217 that case without violating Calder's fourth category of ex post facto laws.

B. Application of New Section 777 to Post March 8, 2000, Probation Violators

New section 777 makes numerous changes to the procedure to be followed when the People move to revoke probation of juvenile wards of the court and modify the previous dispositional order to impose a more restrictive custody. (See fn. 2, ante.) However, those changes apply only to probation revocation proceedings held after March 8, 2000. In the cases before us, the conduct of the juveniles to be proved at their probation revocation hearing as the basis for revocation occurred after the March 8, 2000, effective date of Proposition 21. Because this statutory change on its face operates prospectively (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1207, 246 Cal.Rptr. 629, 753 P.2d 585), and its standards and procedures are triggered by and focus on conduct occurring after its effective date, an essential element necessary to an ex post facto violation appears to be absent; new section 777 does not appear to operate retroactively by applying to conduct completed before its enactment. (Johnson, supra, 529 U.S. at p. 699, 120 S.Ct. at p. 1800; accord, Calder v. Bull, supra, 3 U.S. (Dall.) at p. 391["[e]very ex post facto law must necessarily be retrospective"].)
The juveniles argue that applying these changes to their probation violation hearings violates Calder's fourth category of prohibited ex post facto laws. Their argument rests on the assertion that, under Johnson and Melvin J., the sanction of probation revocation relates back to the date of the original offense for ex post facto purposes rather than to the date of the conduct constituting the basis for the revocation. From this premise, the juveniles argue that applying new section 777 to them would violate Calder's fourth category because the law at the time of their underlying offenses required a certain type and quantum of evidence to demonstrate a probation violation, and new section 777 permits less or different evidence to prove the probation violation.
When a juvenile commits the underlying offense, there is a statutory menu of consequences or sanctions annexed to that offense. Within the set of potential consequences, a court may impose one of many sanctions, including a set of increasingly restrictive custodial dispositional placements, but may also choose to grant probation. New section 777 does not authorize any new or increased sanctions beyond those that were annexed to the original offense and therefore does not violate the second or third Calder category.[9] Because *218 new section 777 neither adds to nor increases any of the sanctions available to a court in the event it decides to revoke probation, the Johnson language, even to the extent it was not dicta, is not applicable to whether new section 777 can be applied here. Johnson discussed whether a statutory change that expressly allowed a court to impose additional sanctions (i.e. a new period of supervised release after release from reincarceration) on an offender who violates his probation could be applied to an offender who committed his offense before the effective date of the statutory expansion of sanctions. We believe Johnson's dicta, to the extent it contains an implied ex post facto analysis, is properly understood as reiterating that the menu of sanctions available if probation or parole is revoked must be determined by the law in effect at the time of the original offense, and a later statutory expansion of such sanctions may not be applied to offenders whose original offense predates the statutory change.[10] The Johnson court expressed a concern that if the probation violation conduct were itself a crime, then increasing the penalty for the underlying crime and prosecuting the probation violation crime raises double jeopardy issues. Double jeopardy issues are avoided if under ex post facto principles the new probation revocation penalties are considered penalties for the underlying offense rather than penalties for the probation revocation conduct. The Johnson court stated: "We therefore attribute post revocation penalties to the original conviction." (529 U.S. at p. 701 [120 S.Ct. at p. 1801], italics added.) However, Johnson did not evaluate which law would apply to determine whether probation should be revoked, but only adverted to the law applicable for determining the level of sanctions available if a court makes the predicate decision to revoke probation. In the instant cases, there is no double jeopardy issue because new section 777 does not impose any penalty not within the menu of sanctions in effect at the time of the underlying offenses.
Because Johnson appears to apply only to changes in the penalties available if the predicate decision to revoke probation is made, and did not address statutory changes to the standards or procedures for determining whether probation should be revoked, we are persuaded that Melvin J.'s reliance on Johnson was incorrect. Melvin J. took Johnson's statement that postrevocation penalties are attributable to the original conviction to mean that the *219 procedures, standards and evidentiary rules applicable to the predicate decision of whether to revoke probation was also fixed by the date of the conduct constituting the original offense. The principal difficulty with this conclusion is that it overlooks the admonition that "`[t]he critical question [for an ex post facto violation] is whether the law changes the legal consequences of acts completed before its effective date.'" (Carmell, supra, at pp. 519-521, 120 S.Ct. at p. 1626.) Although a change in the sanctions available for the original offense changes the legal consequences of the original conduct and thus makes the date of the original offense pivotal for an ex post facto analysis of changes in postrevocation sanctions, a change in the standards and evidentiary rules for determining whether a juvenile has engaged in later conduct warranting revocation of his probation does not change the legal consequences of acts completed before its effective date if the conduct constituting the probation violation occurs after the effective date of the statute.[11] The legal consequences of a juvenile's original conduct are unaffected by the adoption of new section 777: the juvenile remains subject to the same set of more restrictive dispositions if he or she engages in conduct violating probation. The adoption of new section 777 will affect the juvenile only if the juvenile chooses to engage in post-March 8, 2000, conduct violating the terms of probation. We believe there are two distinct questions: has a juvenile engaged in conduct warranting revocation of his probation; and if so, what dispositional alternatives does the law permit after probation is revoked. We read Johnson as addressing only the latter question, and believe the difficulty in Melvin J.'s analysis was in applying Johnson to both issues. We disagree with Melvin J.'s conclusion that new section 777 cannot be applied to probation revocation proceedings for any minor whose underlying offense was prior to March 8, 2000.[12]
Because neither Johnson nor Melvin J. convince us that ex post facto principles *220 bar application of new section 777 to probation revocation proceedings involving minors whose underlying offenses were prior to March 8, 2000, we examine whether Carmell's ex post facto analysis bars application of new section 777 to probation revocation proceedings involving minors who, after March 8, 2000, engage in conduct that allegedly violates their probation. In Carmell, as here, the statutory amendments effectively changed and reduced the nature and quantum of evidence needed to convict the defendant of the offense. However, the Carmell majority recognized that, insofar as those changed standards were applied to offenses based on conduct occurring after the statutory amendments became effective, there is no ex post facto violation because the statute did not change the legal consequences of acts completed before its effective date. (Carmell, supra, at pp. 519-520,120 S.Ct. at p. 1626.) Similarly, although new section 777 reduces the nature and quantum of evidence necessary to revoke a minor's probation, the probation revocation is a consequence of his conduct after the effective date of the statute, and therefore applying the new standards to post-March 8, 2000, conduct does not violate the principles described by Carmell.
The juveniles also assert that applying new section 777 to them violates the first Calder's category because a statute may not retroactively alter the definition of a crime (Collins v. Youngblood, supra, 497 U.S. at p. 39, 110 S.Ct. 2715) or eliminate a defense that was available at the time the offense occurred (Beazell v. Ohio (1925) 269 U.S. 167, 170, 46 S.Ct. 68, 70 L.Ed. 216); applying new section 777 to them would offend these principles. They argue that the old version of section 777 precluded a court from ordering a more restrictive placement unless the evidence showed and the court found that the prior disposition was ineffective in rehabilitating the minor (In re Jorge Q., supra, 54 Cal. App.4th at pp. 231-232, 62 Cal.Rptr.2d 535), and new section 777 eliminates that element or defense in a section 777 proceeding. Even assuming Calder's first category has application to these changed standards for revoking probation,[13] applying these changed standards does not violate ex post facto principles because the conduct to which the statute applies was not conduct completed before the effective date of the statute. Because new section 777 places juvenile probationers on notice of the standards that apply if they engage in conduct violating their probation, Calder's first category does not preclude application of new section 777 to probationers who are subjected to probation revocation proceedings triggered by their post-March 8, 2000, conduct.

C. Conclusion

We conclude that when a juvenile who, after March 8, 2000, engages in conduct alleged to violate the terms of the juvenile's probation, application of new section 777 to the ensuing probation revocation hearing does not violate ex post facto principles even though the underlying offense that gave rise to the declaration of wardship was committed before March 8, 2000.

*221 III

DISPOSITION
In case number D036142, let a writ of mandate issue directing the Superior Court to vacate its order of July 25, 2000, and enter a new and different order that the hearing to determine the placement of Matthew F. shall be conducted in conformance with Welfare and Institutions Code section 777 as amended by Proposition 21. In case number D036290, let a writ of mandate issue directing the Superior Court to vacate its order of August 23, 2000, and enter a new and different order that the hearing to determine the placement of Jonathan G. shall be conducted in conformance with Welfare and Institutions Code section 777 as amended by Proposition 21. The petition for writ of mandate in case number D035995 is denied.
HUFFMAN, Acting P.J., and NARES, J., concur.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Under former section 777, the conduct violating the terms of probation had to be proved beyond a reasonable doubt (In re Arthur N. (1976) 16 Cal.3d 226, 235-240, 127 Cal.Rptr. 641, 545 P.2d 1345); new section 777 requires proof by only a preponderance of the evidence. (§ 777, subd. (c).) Under former section 777, the People could not use hearsay to prove the violating conduct (In re Antonio A. (1990) 225 Cal.App.3d 700, 703-706, 275 Cal.Rptr. 482); new section 777 permits reliable hearsay to the same extent that the hearsay would be admissible in an adult probation revocation hearing. (§ 777, subd. (c).) Under former section 777, the court could not order a more restrictive placement unless the evidence showed the prior disposition was ineffective in rehabilitating the minor (In re Jorge Q. (1997) 54 Cal.App.4th 223, 231-232, 62 Cal.Rptr.2d 535); new section 777 eliminates the necessity for that finding.
[3] Matthew F. was declared a ward on June 18, 1998, and was placed on probation. A condition of his probation was that he be placed in a residential treatment facility and follow the instructions of the persons with whom he was placed. John L. was declared a ward on July 9, 1998; after a period of probation, he was placed in the Youth Correctional Center in November 1999. Jonathan G. was declared a ward after he admitted the allegations of the petition that on January 31, 2000, he violated Penal Code section 626.10, subdivision (a). Although the declaration of wardship for Jonathan G. was entered on March 16, 2000, after the effective date of Proposition 21, the parties appear to agree that for purposes of our ex post facto analysis, the relevant date for consideration is the date of the underlying offenses rather than the date of the wardship declaration.
[4] The probation report for Jonathan G. alleged that he tested positive for drug use on three occasions after March 8, 2000, in violation of the terms of his probation, and sought an order changing his placement from home supervision to a residential treatment facility. The People sought a more restrictive placement for John L. based on the allegation that he violated probation, and was terminated from his Y.C.C. placement, because he engaged in racial intimidation of a fellow inmate during April 2000. The People sought a more restrictive placement for Matthew F. based on the allegation he violated probation by being terminated from his residential treatment facility on June 15, 2000, based on his inadequate progress and refusal to adapt to the guidelines of the program.
[5] Although Calder examined the ex post facto clause of the federal Constitution, the ex post facto clause in the California Constitution is analyzed in the same manner as its federal counterpart. (People v. Castellanos (1999) 21 Cal.4th 785, 790, 88 Cal.Rptr.2d 346, 982 P.2d 211.)
[6] The courts in California interpreted Collins' exclusive reference to the first three categories, and its statement that the fourth category did not prohibit the application of new evidentiary rules, to mean that ex post facto principles were violated only by laws within the first three categories. (See People v. Frazer (1999) 21 Cal.4th 737, 756, 88 Cal.Rptr.2d 312, 982 P.2d 180; Tapia v. Superior Court (1991) 53 Cal.3d 282, 293-299, 279 Cal.Rptr. 592, 807 P.2d 434.)
[7] John L., Matthew F. and Jonathan G. are in this opinion referred to collectively as the juveniles.
[8] The juveniles do not assert that these changes violate either the second or third of the Calder categories. However, the juveniles on appeal raise the additional claim that applying new section 777 would violate the first Calder category. We examine that argument below.
[9] For this reason, neither People v. Martinez (1988) 197 Cal.App.3d 767, 243 Cal.Rptr. 66 nor People v. Williams (1988) 246 Cal.Rptr. 464, 200 Cal.App.3d Supp. 1 support the juveniles' argument that ex post facto principles preclude application of new or changed probation statutes that adversely affect a defendant whose offense was committed before the statutory change. In Martinez, the defendant had completed a series of sexual offenses by 1980; in 1982, a statutory change took effect that significantly restricted the court's ability to allow probation for a person convicted of those crimes. (Martinez, supra, at pp. 775-776, 243 Cal.Rptr. 66.) The court concluded ex post facto principles precluded applying the new probation rules to crimes completed before the statute went into effect. (Id. at pp. 776-778.) Martinez is an example of the Calder's third category, because the new statute increased the punishment for offenses completed before it was enacted. Similarly, in Williams, at the time the defendant committed the offense the probation statute permitted a three-year term; however, the statute thereafter changed to allow a five-year probationary term. (Williams, supra, at p. 4.) The court concluded ex post facto principles precluded applying the harsher probation statute to a crime completed before the statute went into effect. (Id. at p. 5.) Thus, Williams is another example of the type of statute encompassed by Calder's third category. Neither case is dispositive of the issues presented here.
[10] At least one California court has implicitly recognized that this was the thrust of Johnson. In People v. Callejas (2000) 85 Cal. App.4th 667, 102 Cal.Rptr.2d 363, a defendant on probation for an underlying offense violated the terms of his probation, and the trial court revoked probation, sentenced defendant to two years in state prison, and imposed a parole revocation fine under Penal Code section 1202.45, which was enacted two years after defendant committed the underlying offense. The Court of Appeal struck the parole revocation fine, holding that ex post facto principles prohibited the trial court from imposing the parole revocation fine because the defendant committed the underlying offense before the fine statute was enacted. Section 1202.45 increased the penalty for which defendant was eligible beyond that which existed at the time he committed his offense; at the time of that underlying offense, the parole revocation fine did not exist. The Callejas ex post facto analysis, which concluded the new penalty was being applied based on the original offense rather than the subsequent parole violation, cited Johnson for the proposition that a postrevocation penalty relates to the original conviction rather than the new conduct violating the terms of release. (Callejas, supra, at pp. 675-678, 102 Cal.Rptr.2d 363.)
[11] An analogous issue arose in People v. Mills (1992) 6 Cal.App.4th 1278, 8 Cal.Rptr.2d 310. In Mills, the defendant was convicted of a felony in 1981; at that time, the law prohibited ex-felons from possessing a concealable firearm, but the law later changed to prohibit ex-felons from possessing any firearm. The defendant bought a shotgun, and in the later prosecution under the new statute argued the new law could not be applied to him because it altered the legal consequences of his conviction by changing and increasing the restrictions on his future conduct. The court rejected the argument, noting that a retrospective law violates ex post facto principles when it substantially alters the consequences attached to a crime already completed, and reasoned that "it is true that the new statute only applies to defendant because he has the status of a convicted felon, and he achieved that status before that statute became effective. Nevertheless, the new statute only applies to an event occurring after its effective date, i.e. defendant's possession of a shotgun six months after the statute became effective. The event, possession of a shotgun by a felon, occurred after the effective date of the statute, and the 1989 amendment was not retroactive." (Id. at p. 1285, 8 Cal.Rptr.2d 310, original italics.) Similarly, new section 777 applies to the juveniles because they are on probation, and they achieved that status before the effective date of new section 777. However, new section 777 applies only to events occurring after its effective date, i.e. violation of probation, and therefore does not retroactively change the consequences of conduct completed before its effective date.
[12] We caution that Melvin J. was in our view correctly decided on its facts, even though we disagree with its rationale. We conclude the pivotal date for any ex post facto analysis of the applicability of new section 777 is the date of the conduct constituting the probation violation. In Melvin J., the minor's conduct constituting the probation violation occurred before the effective date of new section 777. Under Carmell, new section 777 appears to have changed the legal consequences of that conduct. The conduct of the minor in Melvin J. was completed before the effective date of new section 777 and ex post facto principles would bar application of new section 777 on the facts presented in Melvin J.
[13] Calder's first category stated a law offends ex post facto principles if it "makes an action done before the passing of the law[,] and which was innocent when done, criminal; and punishes such action." (Calder v. Bull, supra, 3 U.S. (Dall.) at p. 390.) The new version of section 777 does not make criminal any conduct that was previously not criminal; conduct that did not violate probation before new section 777 (i.e. was not criminal within the Calder nomenclature) was not converted to an act violating probation (i.e. was criminalized within the Calder nomenclature) by new section 777.