112 Cal.Rptr.2d 831 (2001)
93 Cal.App.4th 130
In re SAMUEL J., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Samuel J., Defendant and Appellant.
No. A092914.
Court of Appeal, First District, Division Five.
October 25, 2001.
Review Granted January 29, 2002.
Review Dismissed June 12, 2002.
*832 Thomas M. Singman, under appointment by the Court of Appeal, Oakland, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and John R. Vance, Jr, Deputy Attorneys General, for Plaintiff and Respondent.
SIMONS, J.
Defendant Samuel J., a minor, appeals from a juvenile court judgment revoking his probation and committing him to the California Youth Authority (CYA). (Well & Inst.Code,[1] § 800.) Since the passage of Proposition 21, limited hearsay evidence is admissible in juvenile probation hearings. In this case, the trial court admitted hearsay statements by percipient witnesses against the defendant, without any showing of the declarants' unavailability or other good cause. This was error and we reverse.

Background
Defendant was originally declared a ward of the court pursuant to section 602 in 1994, after admitting allegations of misdemeanor grand theft. During the next six years numerous additional petitions alleging penal code violations by the minor *833 were found true.[2] Most recently, in January 2000, defendant admitted that he had been an accessory after the fact to a crime (Pen.Code, § 32), committed a misdemeanor battery (Pen.Code, § 242), and attempted to conceal a crime (Pen.Code, §§ 135, 664). In March, 2000, the court committed defendant to the probation department for out-of-home placement at Rites of Passage (ROP). Five weeks after placement, the probation department filed a motion to revoke probation under section 777, alleging defendant violated probation by assaulting a peer and a member of the staff, and by vandalizing property at ROP in an effort to be terminated from the placement. Over objection, the court permitted the minor's probation officer to testify regarding statements made to her by staff members of ROP that defendant had slapped a peer, had rammed his shoulder into one of the staff, and had broken a window at the ROP facility. This hearsay testimony constituted all of the evidence the prosecution presented against the minor at the hearing. After the prosecution rested, the minor testified, admitting some of the alleged conduct and attempting to place his conduct in a sympathetic context. The court found the allegations against defendant were true by a preponderance of the evidence and committed him to CYA for the maximum period of nine years and nine months.

Discussion
In March 2000, California voters approved Proposition 21, The Gang Violence and Juvenile Crime Prevention Act (the Initiative), which substantially modified the juvenile justice system. The Initiative became effective the day after its passage. Among other provisions, the Initiative significantly altered section 777. As pertinent here, this section has historically governed the procedural aspects of juvenile court proceedings to modify previous disposition orders in delinquency cases, when those dispositions had proved ineffective, and to impose more restrictive dispositions, including commitments to CYA. Prior to passage of the Initiative, a modification of the previously imposed disposition began with the filing of a supplemental petition, alleging the commission of a new offense or the violation of a condition of probation not amounting to a crime. A noticed hearing would then be set. At the conclusion of that hearing the court would determine if the previous disposition had been ineffective in the rehabilitation or protection of the minor. (Former § 777, subd. (a)(2) [as amended by Stats.1989, ch. 1117, § 18, pp. 4127-4128.]) If the court upheld the supplemental petition, it could aggregate the maximum confinement times of previously sustained petitions and, where appropriate, commit the minor to CYA for up to that period. (§ 726; In re Ernest R. (1998) 65 Cal.App.4th 443, 76 Cal.Rptr.2d 453.)
It is evident that, before passage of the Initiative, proceedings under section 777 were similar to adult probation violation proceedings. However, in In re Arthur N. (1976) 16 Cal.3d 226, 236, 127 Cal.Rptr. 641, 545 P.2d 1345, our Supreme Court found that similarity "superficial." "Juvenile Court Law `"contemplates a *834 progressively restrictive and punitive series of disposition orders ... namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement."'" (Id. at p. 237, 127 Cal.Rptr. 641, 545 P.2d 1345, quoting In re Aline D. (1975) 14 Cal.3d 557, 564, 121 Cal.Rptr. 816, 536 P.2d 65.) A minor placed on probation for a relatively minor offense, may be "subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct." (In re Arthur N., supra, 16 Cal.3d at p. 237, 127 Cal.Rptr. 641, 545 P.2d 1345; see also In re Manuel L. (1994) 7 Cal.4th 229, 239, 27 Cal.Rptr.2d 2, 865 P.2d 718.) In contrast, an adult probation violation can never lead to a greater punishment than that provided for in the original offense. For this reason, In re Arthur N. held that federal due process required similar treatment for original and supplemental petitions and mandated setting the burden of proof at "beyond a reasonable doubt" for a hearing on a supplemental petition, rather than the lower standard required in adult probation violation hearings. Subsequently, in In re Antonio A. (1990) 225 Cal.App.3d 700, 275 Cal.Rptr. 482, the court held, consistent with In re Arthur N., that hearsay evidence, not subject to an established exception, was inadmissible in section 777 hearings, thereby applying a more restrictive approach to hearsay evidence than in adult probation proceedings.
The Initiative amended section 777 in numerous ways; three are significant to this case. First, supplemental petitions were eliminated and only notice to the minor became required. Second, proceedings under section 777, subdivision (a)(2), were limited to probation violations not amounting to a crime (In re Marcus A (2001) 91 Cal.App.4th 423, 109 Cal.Rptr.2d 919), and no longer required proof that the "previous disposition has not been effective in the rehabilitation or protection of the minor." Finally, subdivision (c) was amended to supersede the decisions in In re Arthur N. and In re Antonio A., by providing for a lower burden of proof and a more flexible hearsay standard.
The modification hearing in this case followed the post-Initiative rules. A notice of probation violation was filed against the minor alleging he had violated a previously imposed order of probation by acting to cause the termination of his placement. At the hearing, the court admitted hearsay evidence under section 777, subdivision (c), which would not have been admissible under In re Antonio A. Finally, the court found that probation was violated, applying a preponderance of the evidence standard, and committed defendant to CYA.[3]
The minor raises numerous challenges to this finding. First, he argues that ex post facto principles were violated by applying the revised section 777 evidentiary rules and standard of proof to modify a disposition order imposed for conduct that predated passage of the Initiative. The People contend no such violation occurred because the revocation was based on conduct that occurred after the Initiative was enacted. This issue is presently pending before the California Supreme Court. (John L. v. Superior Court (2001) 88 Cal. App.4th 715, 106 Cal.Rptr.2d 209, review *835 granted July 18, 2001, S098158.) Because we believe the finding and commitment must be reversed on other grounds, we need not reach the issue in this case and leave it for our high court's guidance.

A. The Hearsay Admitted Exceeded the Scope Permitted by the Initiative

In a somewhat confusing manner, the Initiative amended section 777, subdivision (c), to apply the relaxed rules on admissibility of hearsay found in adult probation proceedings to juvenile probation proceedings. Subdivision (c) now provides, in pertinent part: "The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in People v. Brown, 215 Cal. App.3d [452, 263 Cal.Rptr. 391] (1989) [sic][4] and any other relevant provision of law." The confusion stems from the subdivision's specific reference to one appellate case, People v. Brown, in setting the standard for admissibility. The rules set forth in Brown are more limited than those contained in the most recent Supreme Court decision interpreting the scope of hearsay admissible at adult probation hearings, People v. Arreola (1994) 7 Cal.4th 1144, 31 Cal.Rptr.2d 631, 875 P.2d 736, which was decided many years before the Initiative was drafted and approved. As we discuss below, the difference between Brown and Arreola stems entirely from the type of hearsay involved in Brown. Since the subdivision by its own terms utilizes the adult hearing as the norm and since its specific reference to Brown also directs us to "any other relevant provision of law," we believe that the decisions of the Supreme Courts of the United States and of the State of California, including Arreola, help define the statute's provisions. The People's brief concedes as much by its inclusion of these cases in its analysis. We review the line of cases culminating in the Arreola decision.
Morrissey v. Brewer (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (Morrissey), was the first United States Supreme Court decision to articulate a federal due process right for parolees to confront and cross-examine adverse witnesses at a revocation proceeding. Morrissey held that the parolee had "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) ... [though] the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (Id. at p. 489, 92 S.Ct. 2593.) A year later, Gagnon v. Scarpelli (1973) 411 U.S. 778, 782, 791, 93 S.Ct. 1756, 36 L.Ed.2d 656 (Gagnon) extended Morrissey rights to probationers.
Several California cases have applied this Morrissey-Gagnon analysis. In People v. Winson (1981) 29 Cal.3d 711, 714, 175 Cal.Rptr. 621, 631 P.2d 55, our Supreme Court found that federal due process precluded use of testimony taken from a preliminary hearing transcript in a defendant's criminal case in lieu of live testimony at that defendant's related probation revocation hearing, absent "the declarant's unavailability or other good cause." The defendant's cross-examination of the witnesses at the preliminary hearing was insufficient to permit admissibility of the transcript in the probation revocation hearing, because due process *836 protected not only the defendant's right to cross-examine, but also the right to have the witness "`"stand face to face with the [trier of fact] in order that [it] may look at him, and judge by his demeanor ... whether he is worthy of belief." [Citation.]'" (Id. at p. 717, 175 Cal.Rptr. 621, 631 P.2d 55.)
In People v. Maki (1985) 39 Cal.3d 707, 709, 217 Cal.Rptr. 676, 704 P.2d 743, the Supreme Court found that Morrissey permitted the admissibility of documentary evidence, which did not fall within any hearsay exception, if sufficient indicia of reliability existed. The defendant was alleged to have violated his probation by leaving California without permission. The challenged evidence consisted of a car rental invoice from a Chicago rental agency and a hotel receipt from a Chicago hotel. The invoice had been signed and, after a comparison with known exemplars, the trial court concluded the signature belonged to the defendant. On appeal, the court upheld admission of the document and the revocation decision. (Id. at pp. 716-717, 217 Cal.Rptr. 676, 704 P.2d 743.)
Later, in the Brown decision, the Court of Appeal permitted a police officer at a probation hearing to read into evidence a finding from a chemist's report that a substance seized from the defendant was cocaine. Relying on Maki, the court ruled that hearsay bearing a sufficient degree of trustworthiness is admissible at a probation violation hearing. The court found that reliability was established by the officer's testimony describing the manner in which the confiscated substances had been turned over to the chemist's laboratory and because it was the "`regular business' of the police laboratory to conduct such tests. Moreover the evidence presented at appellant's hearing was corroborated by the articles of cocaine paraphernalia seized at his arrest...." (People v. Brown, supra, 215 Cal.App.3d at p. 455, 263 Cal. Rptr. 391.)
Finally, in People v. Arreola, supra, 7 Cal.4th 1144, 1153-1159, 31 Cal.Rptr.2d 631, 875 P.2d 736, our Supreme Court reviewed and explicated this area of law. Arreola, like Winson, involved the use of a transcript of a prior preliminary hearing to prove the defendant had violated probation. However, in Arreola, unlike Winson, the defendant was notified prior to the preliminary hearing that the transcript would be so used in any future revocation proceeding. The Attorney General contended that the court's decision in Maki had "clarified" Winson, thereby permitting admission of the transcript when the former testimony bore sufficient indicia of reliability and eliminating the need for finding good cause for not presenting the declarant at the hearing. The Attorney General also argued that this level of reliability was established when a defendant had been notified before the preliminary hearing of the intent to use the transcript at a later revocation proceeding and, then, had been given an adequate opportunity to cross-examine the witness at the earlier hearing.
The Supreme Court rejected these arguments, distinguishing the admission of documentary evidence (like that in Maki or Brown) from the use of hearsay "as a substitute for the live testimony of an adverse witness at a revocation hearing." (People v. Arreola, supra, 7 Cal.4th at pp. 1156-1157, 31 Cal.Rptr.2d 631, 875 P.2d 736, italics in original.) "As we observed in Winson, the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. [Citation.] Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory *837 reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signator, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action." (People v. Arreola, supra, 7 Cal.4th at p. 1157, 31 Cal.Rptr.2d 631, 875 P.2d 736, fn. omitted.)
Thus, at an adult probation hearing, simply establishing the reliability of testimonial evidence presented through hearsay is insufficient to warrant its admission.[5] When hearsay involves such evidence, the court may admit it only after taking into account other factors enumerated by the Supreme Court in Arreola, including the "unavailability]" of the declarant under Evidence Code section 240, the degree of difficulty or expense in securing the declarant to testify at the hearing, whether there existed any risk of physical or emotional harm to the witness if required to appear, and the significance of the particular evidence to the court's determination. (People v. Arreola, supra, 7 Cal.4th at pp. 1159-1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.) In the present case, as in Arreola and Winson, the hearsay admitted consisted of statements from the only percipient witnesses to the alleged violation. The prosecution made no showing that these witnesses were unavailable or that good cause existed for failing to present them. Under these circumstances, the court's admission of the probation officer's testimony violated defendant's right of federal due process as defined in Arreola, as well as the requirements of section 777, subdivision (c), which incorporates that decision.

B. Admission of the Hearsay Was Not Harmless Error

Without citation to authority, the Attorney General contends any error in admitting the hearsay was harmless because the minor admitted, albeit with an excuse, that he broke the window and hit another student. We disagree.
Admitting the probation officer's testimony violated federal due process and, consequently, prejudice must be assessed under the "harmless-beyond-a-reasonable doubt" standard. (People v. Arreola, supra, 7 Cal.4th at p. 1161, 31 Cal.Rptr.2d 631, 875 P.2d 736.) To establish the error was harmless, "the beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.) In this instance, all of the prosecution's evidence was inadmissible. Nothing more than speculation supports the People's implicit contention that defendant's decision to testify did not stem from the erroneous receipt in evidence of this testimony. Reversal is required. (People v. Boyer (1989) 48 Cal.3d 247, 280, 256 Cal.Rptr. 96, 768 P.2d 610; People v. Spencer (1967) 66 Cal.2d 158, 168, 57 Cal.Rptr. 163, 424 P.2d 715.)[6]

*838 Disposition
The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
We concur. JONES, P.J., and STEVENS, J.
NOTES
[1] All undesignated section references are to the Welfare and Institutions Code.
[2] The successive violations were: March 17, 1995: Misdemeanor sexual battery (Pen. Code, § 243.4, subd. (a)); June 22, 1995: Burglary (Pen.Code, § 459); March 4, 1996: Misdemeanor battery (Pen.Code, § 242); November 13, 1996: Assault with a deadly weapon on a peace officer (Pen.Code, § 245, subd. (c)); November 13, 1996: Misdemeanor second degree burglary (Pen.Code, § 459); July 20, 1998: Misdemeanor accessory after the fact (Pen.Code, § 32); November 16, 1999: Misdemeanor accessory after the fact (Pen. Code, § 32).
[3] At the probation hearing, the judge found a violation by a preponderance of the evidence. At the disposition hearing, however, the judge stated that she was "convinced beyond a reasonable doubt that the minor has violated the past dispositional orders of the court. . . ." In their briefing, the parties have treated the judge's decision as one based on the preponderance standard and we follow that lead.
[4] The Initiative miscited Brown. The proper citation is People v. Brown (1989) 215 Cal. App.3d 452, 263 Cal.Rptr. 391.
[5] Appellant contends that the judge failed to follow the reliability standard set forth in section 777, subdivision (c). Though she did not articulate any requirement of reliability in admitting the testimony, we presume the judge knew and applied the correct statutory standard. (Evid.Code, § 664; Thompson v. Thames (1997) 57 Cal.App.4th 1296, 1308, 67 Cal.Rptr.2d 695.) Since we determine that the hearsay was improperly admitted even if it were reliable, we do not address the contention that it was not.
[6] Because we have reversed on the basis that the hearsay admitted exceeded the scope permitted by former section 777, subdivision (c), we have not addressed appellant's argument that this subdivision violated federal due process. (Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 65-66, 195 P.2d 1 [appellate courts should avoid reaching constitutional issues unless absolutely necessary and case cannot be decided on other grounds].) Nothing in our opinion, however, should be construed to indicate our view on the validity of this challenge.