[S.F. No. 23317. In Bank. Feb. 23, 1976.]

In re ARTHUR N., a Person Coming Under the Juvenile Court Law.
LEROY FORD, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ARTHUR N., Defendant and Appellant.

## COUNSEL

Robert L. Walker for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Arthur N. appeals from an order of the superior court, sitting as a juvenile court, sustaining a supplemental petition brought pursuant to Welfare and Institutions Code section 777,[1] and committing him to the custody of the Youth Authority. He argues both that proof beyond a reasonable doubt of the facts constituting the misconduct alleged therein is necessary to sustain a supplemental petition when commitment of a ward to the Youth Authority is sought, and that the evidence was insufficient to sustain the petition whether that standard or the "clear and convincing evidence" standard applies.

As we shall explain, we have concluded that the potential consequences of a supplemental petition under section 777, including commitment to the Youth Authority, are such that proof beyond a reasonable doubt that the minor has committed the acts of misconduct upon which the petition is predicated is required by the due process clause of the Fourteenth Amendment to the United States Constitution. Because it does not affirmatively appear from the record that the court applied the proper standard, the order committing appellant to the Youth Authority must be reversed.

[1]Unless otherwise specified, all statutory references herein are to the Welfare and Institutions Code.

Arthur N. was declared a ward of the Yolo County Juvenile Court in 1970 when the court found him to be a person described by section 602[2] after Arthur had admitted the allegation of an amended petition that he had violated Business and Professions Code section 25662,[3] a misdemeanor, by possessing an alcoholic beverage, beer. Although custody was taken from his mother at the disposition hearing (§ 702), and Arthur was placed in the custody of the probation officer and committed to a county-operated boys' ranch, the court terminated that placement after three and one-half months and, in late August 1970, authorized the probation officer to return Arthur to the physical custody of his mother.

The wardship was transferred to Sacramento County in January 1971 when Arthur and his family moved there. Less than a month later Arthur was placed in a foster home after he had been arrested for shoplifting and resisting arrest. In April 1971 he was again returned to his mother's home after he ran away from the foster home and refused to return. In June 1971 he was arrested for auto theft, and was found by the juvenile court to have committed the lesser offense of taking a vehicle for temporary use without permission. (Pen. Code, § 499b.) After a July 1, 1971, disposition hearing, Arthur was again adjudged a ward of the court and was committed to the custody of his mother with a requirement that he work on the county's juvenile court work project. The family moved back to Yolo County within the month, however, and after the transfer of the case had been accepted by the juvenile court of that county a new disposition hearing was held on September 7, 1971.

At the September 7, 1971, hearing, custody of Arthur was taken from his mother and placed in the probation officer who was authorized to release Arthur to the physical custody of his mother. The court also ordered that Arthur be committed to the juvenile hall for 30 days, suspended on condition that he comply with the other terms of his probation, among which were a series of 20 weekend commitments to

---

[2]Section 602 now states: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[3]Section 25662 states: "Any person under the age of 21 years who has any alcoholic beverage in his possession on any street or highway or in any public place or in any place open to the public is guilty of a misdemeanor. This section does not apply to possession by a person under the age of 21 years making a delivery of an alcoholic beverage in pursuance of the order of his parent or in pursuance of his employment."

juvenile hall for participation in a work program unless he obtained employment.

Arthur remained in the physical custody of his mother until May 3, 1972, when he was detained in juvenile hall. A supplemental petition was filed on the next day pursuant to section 777 seeking modification of the previous disposition orders on grounds that he had violated Penal Code section 211, by committing a robbery on April 27, 1972. The petition was sustained after a contested hearing on May 26, 1972. A supplemental probation report was prepared, and after a disposition hearing on June 19, 1972, the court ordered that Arthur remain a ward of the court under the care, custody and control of the probation officer, and committed Arthur to the Youth Authority. He was then 17 years old. The instant appeal followed.[4]

I. Evidence of Robbery

 We turn first to appellant's contention that there was no evidence from which the court could infer that he took any property from the victim, and that, therefore, all of the elements of robbery, the offense with which he was charged in the supplemental petition, were not established under either the "reasonable doubt" or "clear and convincing" evidence standard.

Evidence was presented at the adjudicatory hearing on the supplemental petition to show that on April 27, 1972, at about 3:40 a.m., Orin D. Rowe was walking on Pendergast Street in Woodland, carrying several packages. A light blue pickup truck stopped near him. A person got out, approached Rowe and asked Rowe if he had any money. When Rowe ignored the questioner and continued walking, two other persons got out of the pickup truck and, joined by the first, hit and pushed Rowe who, with a pocket knife, stabbed one of his attackers in the back. Rowe climbed over a hedge into an alley or yard, but then fell or tripped and dropped the packages he had been carrying. The attackers then left and Rowe picked up his packages.

As Rowe walked on, the truck stopped again. Rowe crossed the street, but two of the occupants got out and again approached him. One swung a chain or board at Rowe who fell and once more dropped his packages, this time in the middle of the street. Rowe drew his knife and ran toward

---

[4]Appellant was granted relief from failure to file a timely notice of appeal. (*In re Arthur N.* (1974) 36 Cal.App.3d 935 [112 Cal.Rptr. 89].)

some nearby apartments calling for help. When he returned later with an investigating officer some of the items he had dropped were gone. The missing property included a newly purchased wallet into which he had put $43, a package of new socks, some cigarettes, and a shirt.

Rowe reported the incident to the sheriff's office. As he left the office with a deputy who was to drive him home, the deputy saw the pickup truck drive by. The deputy pursued and stopped the truck. Rowe identified the driver, appellant's brother David, as one of his assailants. Arthur and David were placed in the patrol car to await the arrival of a Woodland police officer. Arthur had a stab wound in his shoulder and was taken to a hospital for treatment. Rowe identified Arthur at the hearing.

Both in his statement signed at the police station, and in his testimony at the hearing, Arthur denied that he and his companions had been the aggressors in the incident that led to his being stabbed. Arthur testified that he and David had gone out to buy cigarettes and had stopped near Rowe because Arthur thought he knew him. When he realized he did not, he turned to walk back to the truck and was stabbed by Rowe. David then got out of the truck and swung a hose at Rowe. The third person, Tony Ortiz, came from across the street to aid David. They stopped the truck near Rowe the second time to ask him why he had stabbed Arthur. Only David and Tony Ortiz got out of the truck. Rowe immediately yelled and ran toward the apartments. No blows were struck. Arthur denied either taking anything from Rowe or picking up any of the property that Rowe dropped. It was stipulated that David's testimony would be the same as Arthur's if he were to testify.

There was no evidence that any of the missing items of property was found in the possession of Arthur or David. Tony Ortiz had not been located by the probation officer at the time of the hearing.

Appellant does not dispute the sufficiency of the evidence to support an inference that Rowe surrendered his property out of fear when he dropped it and fled from his assailants at the time of the second encounter. Nor does he suggest that the evidence would not support an inference that on both occasions these persons intended to take Rowe's property by force and/or fear. He contends only that there is no evidence that he or his companions were the persons who actually took the missing items from the street where Rowe dropped them.

We disagree. Rowe accompanied the investigating police officers to the scenes of the two encounters between Rowe and his assailants after Arthur had been dispatched to the hospital and David had been taken to the hospital. In this short period of time, still in the early morning, several items of value among Rowe's parcels had disappeared, while those of lesser value—a pair of sunglasses and a box of foot powder—remained. In the absence of evidence that the street was heavily traveled by motorists or pedestrians at this hour, it is a logical inference that the same persons who intended to rob Rowe and who caused him to surrender his property and flee, were the cause of the disappearance of the wallet, the money it contained, and the new clothes.

Furthermore, even absent evidence that Arthur and/or his companions had taken any property from Rowe, the other elements of robbery being established, if the court applied the proper standard of proof the order sustaining the petition should be affirmed as modified to reflect that Arthur had committed the offense of attempted robbery. Sections 701[5] and 702[6] do not require that the judge or referee find that a minor charged in an original petition with a criminal offense has committed that offense. Rather, the question to be considered at the adjudicatory hearing is "whether the minor is a person described by [Section 602]." (§ 701.) After the hearing the court must make a finding "whether or not the minor is a person described by [Section 602]." (§ 702.) It is sufficient, therefore, if the court finds that the minor has violated any criminal law or, if he is already a "601 ward," that he has failed to obey an order of the court.

[5]Section 701 states: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."

[6]Section 702 states: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 600, 601, or 602. If it finds that the minor is not such a person, it shall order that the petition be dismissed and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may

Similarly, the question to be decided at a hearing on a supplemental petition filed under section 777 is whether, since becoming a ward of the court, the minor has committed additional acts of misconduct or displayed other attributes "sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (§ 777, subd. (a).)

However, due process requires that a minor, like an adult, have adequate notice of the charge so that he may intelligently prepare his defense. (*In re Gault* (1967) 387 U.S. 1, 33 [18 L.Ed.2d 527, 549, 87 S.Ct. 1428].) But notice is adequate and due process is served when the trier of fact is permitted to find an accused guilty of an offense necessarily included in that with which he is charged (*In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]) or of a lesser offense which, although not necessarily included in the statutory definition of the offense, is expressly pleaded in the charging allegations. (*People* v. *Marshall* (1957) 48 Cal.2d 394, 403-405 [309 P.2d 456].) Since the original petition must state the facts to support the conclusion that the minor is within section 602 (§ 656), and is otherwise demurrable, adequate notice to comport with the requirements of due process is assured. The adequacy of notice in a supplemental petition is measured by the same standards. (*In re Donna G.* (1970) 6 Cal.App.3d 890 [86 Cal.Rptr. 421].)

The Juvenile Court Law permits a judge or referee to sustain a petition seeking to have a minor declared a person coming within section 602 on the basis of findings that the minor committed an offense included within that charged in the petition. Section 678 states that: "The provisions of Chapter 8 (commencing with Section 469) of Title 6 of Part 2 of the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions shall apply to petitions and proceedings under this chapter, to the same extent and with the same effect as if proceedings under this chapter were civil actions." In thus permitting amendments to conform to proof (Code Civ. Proc., §§ 470, 471) when the minor has not been misled in preparing his defense and will not be prejudiced thereby (Code Civ. Proc., § 469), the Legislature has demonstrated its intention to permit the court to sustain a petition if the evidence, while insufficient

---

continue the hearing, if necessary, to receive the social study of the probation officer or to receive other evidence on its own motion or the motion of a parent or guardian for not to exceed 10 judicial days if the minor is detained during such continuance, and if the minor is not detained, it may continue the hearing to a date not later than 30 days after the date of filing of the petition. The court may, for good cause shown continue the hearing for an additional 15 days, if the minor is not detained. The court may make such order for detention of the minor or his release from detention, during the period of the continuance, as is appropriate."

to establish that the minor committed the charged offense, is nonetheless adequate to prove a lesser, included offense. (Cf. Pen. Code, § 1181, subd. 6.) It follows that a petition brought under section 777 may also be sustained upon a finding that a lesser offense, or some but not all of any charged acts of misconduct, were committed by the minor.

Since the order declaring a minor to be a person within section 602 "may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment" (§ 800), the reviewing court also has the power to modify an order sustaining either a 602 or a 777 petition to reflect the commission of a lesser offense. (Pen. Code, §§ 1181, subd. 6, 1260. See, e.g., *People* v. *Ruiz* (1975) 14 Cal.3d 163 [120 Cal.Rptr. 872, 534 P.2d 712].)

As we have noted above, evidence of all of the elements of robbery was presented at the adjudicatory hearing and thus it is unnecessary to exercise that power here. Appellant also argues, however, that this evidence was not sufficient to prove beyond a reasonable doubt that he committed robbery, and that due process requires this quantum of evidence.

## II. Standard of Proof

■ A proceeding to have a minor declared a ward of the court under section 602 on grounds that the minor has committed acts which would be a crime were he an adult is commenced by filing a petition pursuant to sections 650[7] and 656.[8] The parties agree that in the hearing on the petition proof beyond a reasonable doubt is required of the facts alleged in support of the conclusion that a minor is a person described by section

---

[7]Section 650 states: "A proceeding in the juvenile court to declare a minor a ward or a dependent child of the court is commenced by the filing with the court, by the probation officer, of a petition, in conformity with the requirements of this article."

[8]Section 656 states: "A petition to commence proceedings in the juvenile court to declare a minor a ward or a dependent child of the court shall be verified and must contain:

"(a) The name of the court to which the same is addressed.

"(b) The title of the proceeding.

"(c) The code section or sections and subdivision or subdivisions under which the proceedings are instituted.

"(d) The name, age, and address, if any, of the minor upon whose behalf the petition is brought.

"(e) The name or names and residence address, if known to petitioner, of all parents and guardians of such minor. If there is no parent or guardian residing within the State, or if his place of residence is not known to petitioner, the petition must also contain the name and residence address, if known, of any adult relative residing within the county,

602. Not only is that burden imposed by section 701, but the United States Supreme Court has declared it to be an attribute of the due process to which a minor is entitled when charged with a criminal offense with a possibility of institutional confinement. (*In re Winship* (1970) 397 U.S. 358, 367 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068].) The dispute exists only as to the burden of proof necessary to sustain a supplemental petition filed pursuant to section 777[9] seeking to modify a previous order of the juvenile court when that petition alleges that a minor who is already a ward has engaged in acts of misconduct or behavior of a type which suggest that the prior dispositional order has been ineffective in rehabilitating the minor and for that reason a more restrictive type of custody or supervision is necessary. Often, as in the instant case, such a supplemental petition alleges that the ward has disobeyed an order of the juvenile court by his commission of a criminal offense.

Respondent suggests that since the juvenile court has discretion under section 775[10] to modify any prior order made with respect to a person subject to its jurisdiction on a factual showing that the prior order has been ineffective (*In re Donna G., supra,* 6 Cal.App.3d 890, 894), the

---

or, if there be none, the adult relative residing nearest to the location of the court.

"(f) A concise statement of facts, separately stated, to support the conclusion that the minor upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted.

"(g) The fact that the minor upon whose behalf the petition is brought is detained in custody or is not detained in custody, and if he is detained in custody, the date and the precise time the minor was taken into custody."

[9]Section 777 provides: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.

"(a) The supplemental petition shall be filed by the probation officer in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor.

"(b) Upon the filing of such supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the probation officer shall cause notice thereof to be served upon the persons and in the manner prescribed by Sections 658 and 660.

"(c) An order for the detention of the minor pending adjudication of the petition may be made only after a hearing is conducted pursuant to Article 6 (commencing with Section 625) of this chapter."

[10]Section 775 states: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

hearing on a supplemental petition is analogous to an adult hearing on revocation of probation in which charged violations need be proved only by clear and convincing evidence. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 876-877, fn. 8 [120 Cal.Rptr. 384, 533 P.2d 1024].) The similarity between proceedings on probation revocation and those on supplemental petitions in juvenile cases is superficial, however. Neither the purposes nor the consequences of these disparate proceedings are the same. The sole point of similarity is that each proceeding is triggered by a petition alleging acts of misconduct by a person already subject to the jurisdiction of the court. Here the similarity ends, however, for the most serious consequence that may befall a probationer if his probation is revoked is the imposition or execution of the judgment imposing the statutory term of imprisonment for the offense of which he was originally convicted, and in determining the maximum amount of time he shall serve within the statutory range, the Adult Authority may not consider his conduct subsequent to that offense. (*In re Rodriguez* (1975) 14 Cal.3d 639, 652-653 [122 Cal.Rptr. 552, 537 P.2d 384].) This is not so in the case of a ward of the juvenile court.

The first and most obvious distinction is that a supplemental petition may seek to commit a minor who was declared a ward because he was a person described in section 601[11] to the Youth Authority.[12] A "601 ward" is not accorded a reasonable doubt standard at the initial adjudicatory hearing (§ 701), and has not necessarily been found to have violated any law. It is clear that such a commitment would deny due process to the ward since the factual basis for his confinement in a Youth Authority

---

[11]Section 601 encompasses "Any person under the age of 18 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, or custodian, or who is beyond the control of such person." As amended during the 1975-1976 legislative session, effective January 1, 1976 it also expressly includes minors who are habitual truants, or who fail to obey school authorities and/or attendance boards. (Stats. 1975, ch. 1183, § 2; No. 8, West's Cal. Legis. Service, p. 3167, No. 7, Deering's Adv. Legis. Service, p. 616.)

[12]Section 730 states: "When a minor is adjudged a ward of the court on the ground that he is a person described by Section 601, the court may order any of the types of treatment referred to in Section 727, and as an additional alternative, may commit the minor to a juvenile home, ranch, camp or forestry camp. If there is no county juvenile home, ranch, camp or forestry camp within the county, the court may commit the minor to the county juvenile hall.

"When such ward is placed under the supervision of the probation officer or committed to his care, custody and control, the court may make any and all reasonable orders for the conduct of such ward including the requirement that he go to work and earn money for the support of his dependents or to effect reparation and in either case that he keep an account of his earnings and report the same to the probation officer and apply such earnings as directed by the court. The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice

facility would not have been established beyond a reasonable doubt in any proceeding.[13]

The danger exists with respect to "602 wards" also notwithstanding the fact that most "602 wards" have been adjudicated such on the basis of their commission of a crime that has been proven beyond a reasonable doubt. This follows when, as here, the basis for the original adjudication is a minor offense for which offense alone removal of the ward from his parents' custody would be an abuse of discretion and commitment to the Youth Authority improper. Unlike adult criminal proceedings in which probation may be granted as an act of leniency in appropriate cases, but where denial of probation and imposition of sentence to a term of imprisonment is ordinarily not an abuse of discretion, the Juvenile Court Law " 'contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement.' " (*In re Aline D.* (1975) 14 Cal.3d 557, 564 [121 Cal.Rptr. 816, 536 P.2d 65].) Thus, while the adult whose probation is revoked may not be subjected to any greater punishment than that provided for the original offense, a juvenile adjudged a 601 ward as the result of noncriminal conduct, and a 602 ward adjudged so on the basis of a minor offense, may be removed from the parents' home and subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct. For this reason, respondent's suggestion that a hearing on a supplemental petition is a hearing on "disposition," not subject to the reasonable doubt standard, rather than an "adjudicatory hearing" cannot withstand scrutiny.

Commitment to the Youth Authority in particular, brings about a drastic change in the status of the ward which not only has penal overtones, including institutional confinement with adult offenders,[14] but

---

may be done and the reformation and rehabilitation of the ward enhanced.

"Such ward may be committed to the Youth Authority only upon a proceeding for the modification of an order of the court conducted pursuant to the provisions of Section 777."

[13]The Youth Authority has recently reevaluated its acceptance policies, and has determined that it cannot offer services that will materially benefit "601 wards." As a matter of policy, therefore, it will not accept such wards for commitment. (See Intro. to Cal. Youth Authority, Procedures and Criteria (Oct. 1975).)

[14]Section 1731.5 permits a court to "commit to the authority any person convicted of a public offense who comes within subdivisions (a). (b), and (c), or subdivisions (a). (b),

also removes the ward from the direct supervision of the juvenile court.[15] Whereas the juvenile court has no jurisdiction once a ward becomes 21 years of age,[16] the Youth Authority may in appropriate cases, extend its supervision over its wards well beyond their 21st birthday.[17] Youth Authority wards may even be placed in state hospitals without the safeguard of Lanterman-Petris-Short Act commitment proceedings to which wards of the juvenile court are entitled (*In re Michael E.* (1975) 15 Cal.3d 183 [123 Cal.Rptr. 103, 538 P.2d 231]).[18] They may be required to work.[19] And, in determining how long to retain supervision over a ward, the Youth Authority, unlike the Adult Authority, not only may, but must consider acts of misconduct by the ward subsequent to the initial adjudication of wardship by the juvenile court.[20] It is not limited to a

---

and (d), below:

"(a) Is found to be less than 21 years of age at the time of apprehension.

"(b) Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment.

"(c) Is not granted probation.

"(d) Was granted probation and probation is revoked and terminated.

"The Youth Authority shall accept a person committed to it pursuant to this article if it believes that the person can be materially benefited by its reformatory and educational discipline, and if it has adequate facilities to provide such care."

[15](See §§ 1765 and 1766.) The court may, however, set aside the commitment on notice and hearing and return the minor to the former wardship status (§ 779).

[16]Section 607 provides: "The court may retain jurisdiction over any person who is found to be a ward or dependent child of the juvenile court until such ward or dependent child attains the age of 21 years."

[17]Section 1769 states: "Every person committed to the authority by a juvenile court shall be discharged upon the expiration of a two-year period of control or when the person reaches his 21st birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)." Section 1802 provides for repeated applications for continued detention.

[18]Section 1756 provides that: "Notwithstanding any other provision of law, if, in the opinion of the Director of the Youth Authority, the rehabilitation of any mentally disordered, or mentally deficient person confined in a state correctional school may be expedited by treatment at one of the state hospitals under the jurisdiction of the Department of Mental Hygiene, the Director of the Youth Authority shall certify that fact to the Director of Mental Hygiene who may authorize receipt of such person at one of such hospitals for care and treatment. . . ." (But cf. § 779.)

[19]Section 1760.4 provides that specified work may be required of wards housed in forestry camps. Section 1760.5 allows the director to require them to do conservation work, while section 1768 allows him to provide "work projects" or "work assignments" for pay.

[20]Section 1761 provides: "When a person has been committed to the Authority it shall under rules established by it forthwith examine and study him and investigate all the pertinent circumstances of his life and the antecedents of the violation of law because of which he has been committed to it."

period that is proportionate to the original act or acts of misconduct or criminal behavior upon which jurisdiction over the minor was first asserted.[21]

The history of the Arthur N. wardship exemplifies the case in which the most severe disposition available to the juvenile court results not from the initial act but from a series of subsequent acts which singly or together support the juvenile court's exercise of its discretion to commit the minor to the Youth Authority. Since the court's decision is based on a series of findings that Arthur committed new acts of misconduct, his commitment to the Youth Authority has been accomplished without due process unless those findings which the court considered were made by application of the reasonable doubt standard.

In its seminal case affirming the right of juveniles to due process, *In re Gault, supra,* 387 U.S. 1, the Supreme Court expressly stated that it was not ruling on whether "ordinary due process requirements" applied at disposition hearings (387 U.S. at p. 27 [18 L.Ed.2d at pp. 545-546]) but the court also emphasized that when a charge of misconduct was being adjudicated the hearing must comport with due process, and further pointed out that the interests at stake involved not only the minor's freedom, but also the parents' right to custody, both of which were entitled to the protection of due process. In *Gault* the court concluded "that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed,* the child and his parents must be notified of" the right to counsel. (387 U.S. at p. 41 [18 L.Ed.2d at p. 554], italics added.) The court also held that due process "does not allow a *hearing . . . in which a youth's freedom and his parents' right to his custody are at stake"* without adequate notice of the issues to be met. (*Id.,* at pp. 33-34 [18 L.Ed.2d at pp. 549-550]; italics added.)

In *In re Winship, supra,* 397 U.S. 358, the court held that the attributes of due process of which it had spoken in *Gault* include the reasonable doubt standard of proof. The court said when there was a possibility, such as that here present, of a juvenile being engaged in a "general course of conduct inimical to his welfare that calls for judicial interven-

---

[21] Section 1765 states: "(a) Except as otherwise provided in this chapter, the Authority shall keep under continued study a person in its control and shall retain him, subject to the limitations of this chapter, under supervision and control so long as in its judgment such control is necessary for the protection of the public.

"(b) . . . . . . . . . . . . . . . . . . . . . . ."

tion," the reasonable doubt standard applies if the conduct allegedly involves criminal acts and if institutional confinement is a possible disposition and ". . . that intervention cannot take the form of subjecting the child to the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult." (*In re Winship, supra,* 397 U.S. 358, 367 [25 L.Ed.2d 368, 377]. Fn. omitted.)

*Gault* and *Winship* rejected the argument that because juvenile proceedings are civil rather than criminal the due process clause was inapplicable and instead looked to the reality of the process (397 U.S. at pp. 365-366 [25 L.Ed.2d at pp. 375-377]; 387 U.S. at p. 27 [18 L.Ed.2d at pp. 545-546]). The reality of the supplemental petition process under our Juvenile Court Law is that the hearing on the petition is preliminarily an adjudicatory hearing; that the purpose may be to prove that the juvenile has committed a crime; and that if the charged acts of misconduct or crimes are proved the juvenile may' be removed from his parents' custody and may as a result of this adjudication, either presently or in the future, be institutionalized locally or committed to the Youth Authority. This reality compels the conclusion that the hearing cannot be equated either to a dispositional hearing or to a probation revocation hearing. The due process clause of the Fourteenth Amendment to the United States Constitution therefore requires that the standard of proof of the charged acts of misconduct or crimes be proof beyond a reasonable doubt. We thus agree with the Court of Appeal in *In re Francis W.* (1974) 42 Cal.App.3d 892, 898 [117 Cal.Rptr. 277], that there is "no basis in reason to distinguish between an original and a supplementary proceeding" and with its conclusion that when a supplemental petition charges acts of misconduct or crimes which may lead to substantially more restrictive punishment or custody the bifurcated hearing procedure established for original proceedings by sections 701 and 702 should be utilized and the juvenile accorded the same constitutional and statutory rights that he has on an original petition.

■ The record here does not affirmatively reflect application by the court of the reasonable doubt standard which was first held applicable to supplemental petitions in *In re Francis W., supra,* 42 Cal.App.3d 892, long after the hearing in issue here was conducted. It is the primary responsibility of the trial judge or referee to weigh the evidence in the first instance (*People* v. *Teale* (1969) 70 Cal.2d 497, 505 [75 Cal.Rptr. 172, 450 P.2d 564]). We need not decide, therefore, whether the evidence was sufficient under this test and we have no occasion to consider the

modification of the order to reflect a lesser offense. The order sustaining the petition and committing appellant to the Youth Authority must be reversed.

Prior to the filing of our opinion the Youth Authority discharged appellant from the commitment here in question, and appellant attained the age of 21. Since the juvenile court retains jurisdiction only until a ward becomes 21 (§ 607), that court no longer has jurisdiction except to enter its order dismissing the wardship *nunc pro tunc* to the date on which its jurisdiction terminated. Return of the appellant to the juvenile court for further proceedings is, therefore, unnecessary.

The order appealed from is reversed and the matter remanded to the Superior Court for the County of Yolo sitting as a juvenile court with directions to enter its order dismissing the wardship.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.