Filed 1/11/23  Riverside County Probation Dept. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIVERSIDE COUNTY PROBATION DEPARTMENT,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>    Respondent;<br><br>J.A. et al.,<br><br>    Real Parties in Interest. | E077962<br><br>(Super.Ct.No. JUV086925)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on December 22, 2022 and modified on December 28, 2022 is further MODIFIED as follows.

On page 19, at the beginning of the last full paragraph, replace with

> Let a petition for writ of mandate issue directing respondent superior court to vacate defendant's commitment to Pathways and to dismiss the case.

> Let a writ of mandate issue directing respondent superior court to vacate defendant's commitment to Pathways and to dismiss the case.

1

Except for these modifications, the opinion remains unchanged.  This modification does not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ              
P. J.

We concur:

McKINSTER              
               J.

MILLER                
               J.

cc: See attached mailing list

MAILING LIST FOR CASE: E077962
Riverside County Probation Department v. The Superior Court; J.A. et al.


Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502


Emily Christine Headlee
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501


John F. Schuck
Law Office of John F. Schuck
2065 Bowdoin Street
Palo Alto, CA 94306


Paresh Babu Makan
Law Offices of the Public Defender
4075 Main Street, Suite 100
Riverside, CA 92501


Sophia H. Choi
Office of the District Attorney
3960 Orange Street
Riverside, CA 92501


Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101 2396

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| RIVERSIDE COUNTY PROBATION DEPARTMENT, | E077962 |
| Petitioner, | (Super.Ct.No. JUV086925) |
| v. | ORDER MODIFYING OPINION |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | [NO CHANGE IN JUDGMENT] |
| Respondent; | |
| J.A. et al., | |
| Real Parties in Interest. | |

THE COURT

The opinion filed in this matter on December 22, 2022 is MODIFIED as follows.

1.  On page 9, at the end of the last full paragraph, replace

    (*In re J.B.* (2022) 75 Cal.App.5th 410, 413, fn. 1, pet. for rev. filed Mar. 22, 2022.)

with

    (*In re J.B.* (2022) 75 Cal.App.5th 410, 413, fn. 1.)

2.  On page 13, at the end of the first partial paragraph, replace

1

> (*People v. Fuentes* (2022) 78 Cal.App.5th 670, 679, pet. for rev. filed Jun. 14, 2022.)

with

> (*People v. Fuentes* (2022) 78 Cal.App.5th 670, 679.)

2.  On page 15, at the end of the last full paragraph, replace

> *People v. Hwang* (2021) 60 Cal.App.5th 358 (*Hwang*), review granted Apr. 14, 2021 (S267274)

with

> *People v. Hwang* (2021) 60 Cal.App.5th 358 (*Hwang*), review granted April 14, 2021, S267274, review dismissed July 22, 2022

Except for these modifications, the opinion remains unchanged.  This modification does not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.


We concur:

McKINSTER

J.

MILLER

J.


cc: See attached mailing list

2

MAILING LIST FOR CASE: E077962
Riverside County Probation Department v. The Superior Court; J.A. et al.

Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502

Emily Christine Headlee
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501

John F. Schuck
Law Office of John F. Schuck
2065 Bowdoin Street
Palo Alto, CA 94306

Paresh Babu Makan
Law Offices of the Public Defender
4075 Main Street,  Suite 100
Riverside, CA 92501

Sophia H. Choi
Office of the District Attorney
3960 Orange Street
Riverside, CA 92501

Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA  92101 2396

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIVERSIDE COUNTY PROBATION DEPARTMENT,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF RIVERSIDE COUNTY,<br><br>      Respondent;<br><br>J.A. et al.,<br><br>      Real Parties in Interest. | E077962<br><br>(Super.Ct.No. JUV086925)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate from an order of the Superior Court of Riverside County.  Samah Shouka, Judge.  Petition granted.

Minh C. Tran and Gregory P. Priamos, County Counsel, Kelly A. Moran, Chief Deputy County Counsel, and Emily C. Headlee, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

John F. Schuck, under appointment by the Court of Appeal, for Real Party in Interest J.A.

Michael A. Hestrin, District Attorney, and Sophia Choi, Deputy District Attorney, for Real Party in Interest the People.

Jennifer B. Henning; and James R. Williams, County Counsel (Santa Clara), Kavita Narayan, Assistant County Counsel, Marcelo Quiñones, Lead Deputy County Counsel, and Mona M. Williams, Deputy County Counsel, for California State Association of Counties as Amicus Curiae on behalf of Petitioner.

When defendant J.A. was 15, he committed multiple heinous crimes. As the law at the time permitted, he was tried in adult criminal court, found guilty, and sentenced to life in prison.

In 2019, the law was changed so that a person who committed a crime at 15 cannot be transferred to adult court and must be dealt with, if at all, in the juvenile system. At that point, due to a series of resentencings and appeals, the judgment against defendant was not final. Therefore, in 2021 — when defendant was 40 — the juvenile court vacated the sentence, declared him a ward, and committed him to the Division of Juvenile Justice (DJJ); when the DJJ rejected the commitment, it committed him to a secure youth treatment facility (SYTF) operated by the Riverside County Probation Department (Probation). As we will discuss in more detail, the juvenile court ruled that, despite his age, it had jurisdiction over him until the expiration of a two-year period of control.

Probation then filed this writ proceeding. Probation and defendant both contend that the juvenile court had no jurisdiction to order any disposition whatsoever; all it could do was dismiss the petition and thus allow defendant's immediate release. The People respond that the juvenile court's ruling was correct, albeit for different reasons than it gave.

We will hold that, under Welfare and Institutions Code section 607,[1] the juvenile court had no jurisdiction to do anything other than to dismiss the petition. Accordingly, we must grant an extraordinary writ.

I

STATEMENT OF THE CASE

In 1996, defendant was charged in juvenile court with multiple crimes, all committed when he was 15.

At that time, a 15-year old accused of an offense specified in section 707, subdivision (b) (707(b)), including those with which defendant was charged, could be transferred to adult criminal court, if the juvenile court found him or her unfit for juvenile treatment. (Former § 707, subd. (d), Stats. 1994, ch. 453, § 9.5, pp. 2523-2528.) The juvenile court found defendant unfit and duly transferred him.

After a jury trial, defendant was found guilty of two counts of kidnapping during a carjacking (§ 209.5), two counts of kidnapping to commit robbery (§ 209, subd. (b)), two

---

[1] All further statutory citations are to the Welfare and Institutions Code, unless otherwise specified.

3

counts of robbery (§ 211), two counts of carjacking (§ 215), one count of forcible sodomy (§ 286, subd. (c)), one count of forcible rape (§ 261, subd. (a)(2)) and four counts of forcible oral copulation in concert (§ 288a, subd. (d)), with various enhancements. In 1999, he was sentenced to eight consecutive life terms, plus seven years four months, in prison.[2]

In 2014, the People conceded that defendant was entitled to resentencing under *People v. Caballero* (2012) 55 Cal.4th 262, 268 ["sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment"]. Accordingly, the trial court vacated defendant's sentence and resentenced him to a total of 40 years to life in prison.

Defendant appealed. In 2015, we affirmed (*People v. Ortega* (Nov. 23, 2015, E061027) [nonpub. opn.]); however, he filed a petition for review, which was granted. (*People v. Ortega* (Mar. 9, 2016, S230917) 2016 Cal. LEXIS 1398.)

In 2018, the Supreme Court transferred the appeal back to us with directions to vacate and reconsider in light of *People v. Contreras* (2018) 4 Cal.5th 349 [sentencing a juvenile offender to 50 years to life is cruel and unusual punishment, even if the juvenile offender's parole eligibility date is within his or her natural life expectancy] (*Contreras*). (*People v. Ortega* (June 13, 2018, S230917) 2018 Cal. LEXIS 4334.)

---

[2] In 2008, the juvenile court dismissed the petition. No new petition was ever filed. Arguably, in 2021, the juvenile court lacked jurisdiction for this reason alone. However, we need not decide this point.

4

Later in 2018, we held that, under *Contreras*, the trial court erred by considering defendant's life expectancy. We reversed and remanded for resentencing. In addition, we noted that under Proposition 57, defendant was entitled to a fitness hearing. Because it was not clear from the appellate record whether he had already had a fitness hearing, we directed the trial court to make that determination on remand. (*People v. Ortega* (Aug. 24, 2018, E061027) [nonpub. opn.].)

On January 1, 2019 — after we issued our remittitur but before defendant was resentenced — Senate Bill No. 1391 (2017-2018 Reg. Sess.) (SB 1391) went into effect. SB 1391 amended section 707 so as to provide that, subject to exceptions not applicable here, a person who committed a crime at the age of 14 or 15 cannot be transferred to adult court.

Accordingly, in June 2021, the trial court ruled (with both counsel concurring) that, in light of SB 1391, transfer was "moot" and adult sentencing should be "vacated."[3] It declared defendant a ward of the court and committed him to the DJJ.

In July 2021, however, the DJJ rejected the commitment. (See § 736, subd. (a).) Thus, in August 2021, the juvenile court vacated the commitment and set a new dispositional hearing.

---

[3]     The juvenile court correctly anticipated the holding of *People v. Padilla* (2022) 13 Cal.5th 152 that the presumption that an ameliorative amendment applies retroactively to a nonfinal judgment extends to a judgment that became nonfinal because it was vacated and resentencing was ordered.

Defendant objected that the juvenile court no longer had jurisdiction over him. The Riverside County Probation Department (Probation) made a special appearance, also arguing that the juvenile court lacked jurisdiction. The People argued that the juvenile court had jurisdiction under section 607, subdivision (h).

The juvenile court agreed that it had jurisdiction under section 607, subdivision (h). It committed defendant to Pathways to Success, an SYTF operated by Probation. It stayed its decision temporarily to enable the parties to file a writ petition.

Defendant filed an appeal. Probation then filed a writ petition.

In the writ proceeding, we issued an order to show cause and stayed the trial court's order. We ordered that the appeal and the writ proceeding be considered together (but not consolidated).**4**

II

DISCUSSION

Defendant and Probation contend that the juvenile court had no jurisdiction over defendant because he was over 25.

A.    *Legal Background.*

"'A "juvenile court" is a superior court exercising limited jurisdiction arising under juvenile law.' [Citation.]" (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 66.)

---

**4**        For this reason, we have considered all parties' briefs in both the writ proceeding and the appeal. We have also taken judicial notice of the record in the appeal.

Subject to exceptions not relevant here, "any minor who is between 12 years of age and 17 years of age, inclusive, when he or she violates any law . . . defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge the minor to be a ward of the court." (§ 602, subd. (a).) This defines the juvenile court's "initial jurisdiction." (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 710, disapproved on other grounds in *People v. Green* (1980) 27 Cal. 3d 1, 34-35.) By contrast, "[w]hen a juvenile is declared a ward of the juvenile court, the juvenile becomes 'subject to its continuing jurisdiction.' [Citation.]" (*In re Antoine D.* (2006) 137 Cal.App.4th 1314, 1320.)

"Because the juvenile court's [initial] jurisdiction is based on age at the time of the violation of a criminal law or ordinance, '[i]t is . . . possible that a person might commit a murder at age 17, be apprehended 50 years later, and find himself subject to juvenile court [initial] jurisdiction at age 67.' [Citation.]" (*People v. Ramirez*, *supra*, 35 Cal.App.5th at p. 66.) In that event, however, unless the juvenile court has a basis for continuing jurisdiction, it must dismiss. (*In re Arthur N.* (1976) 16 Cal.3d 226, 241.)

Section 607 provides for the termination of continuing jurisdiction. In October 2021, when the juvenile court ruled, it provided, as relevant here:[5]

"(a) The court may retain jurisdiction over a person who is found to be a ward . . . of the juvenile court until the ward . . . attains 21 years of age, except as provided in subdivisions (b), (c), [and] (d) . . . .

---

[5] All further citations to a subdivision refer to subdivisions of section 607, as it stood in October 2021, unless otherwise specified.

7

"(b) The court may retain jurisdiction over a person who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707, until that person attains 23 years of age, subject to the provisions of subdivision (c).

"(c) The court may retain jurisdiction over a person who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707 until that person attains 25 years of age if the person, at the time of adjudication of a crime or crimes, would, in criminal court, have faced an aggregate sentence of seven years or more.

"(d) The court shall not discharge a person from its jurisdiction who has been committed to the [DJJ] while the person remains under the jurisdiction of the [DJJ] . . . .

"(g) Notwithstanding subdivisions (b) [and] (c), . . . a person who is committed by the juvenile court to the [DJJ] on or after July 1, 2012, but before July 1, 2018, and who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (b) of Section 707 shall be discharged upon the expiration of a two-year period of control, or when the person attains 23 years of age, whichever occurs later . . . .

"(h)(1) Notwithstanding subdivision (g), a person who is committed by the juvenile court to the [DJJ], on or after July 1, 2018, and who is found to be a person described in Section 602 by reason of the commission of an offense listed in subdivision (c) of Section 290.008 of the Penal Code or subdivision (b) of Section 707 of this code,

8

shall be discharged upon the expiration of a two-year period of control, or when the person attains 23 years of age, whichever occurs later . . . ."

"(2)  A person who, at the time of adjudication of a crime or crimes, would, in criminal court, have faced an aggregate sentence of seven years or more, shall be discharged upon the expiration of a two-year period of control, or when the person attains 25 years of age, whichever occurs later . . . .

"(3)  This subdivision does not apply to a person who is committed to the [DJJ] . . . by a court prior to July 1, 2018, as described in subdivision (g)."  (Former § 607, Stats. 2021, ch. 18, § 4, pp. 220-221.)

The DJJ was "the state's most restrictive placement for its most severe juvenile offenders . . . ."  (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.)  "The DJJ was previously known as the California Youth Authority (CYA).  [Citation.]"  (*Id.* at p. 906, fn. 4.)  "The DJJ is also known as the California Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF).  [Citation.]  DJJ and DJF are used interchangeably in case law.  [Citation.]"  (*In re J.B.* (2022) 75 Cal.App.5th 410, 413, fn. 1, pet. for rev. filed Mar. 22, 2022.)

In 2020 the Legislature enacted Senate Bill No. 823 (2019-2020 Reg. Sess.), also known as "juvenile justice realignment."  (Stats. 2020, ch. 337.)  Realignment requires the eventual closure of DJJ and the devolution of its responsibilities onto the counties. (§ 736.5, subd. (a).)  The county-level equivalent of DJJ is an SYTF (§ 875), such as Pathways.  After July 1, 2021, with one exception, wards may no longer be committed to

9

DJJ.  (§ 736.5, subd. (b).)  Wards committed to DJJ before July 1, 2021 remain there, unless released, discharged, or moved, until DJJ closes on June 30, 2023.  (§ 736.5, subd. (d).)

B.      *Subdivision (h)(2) as a Basis for Jurisdiction.*

Defendant and Probation argue that defendant comes within subdivision (c), which provides that the juvenile court may retain jurisdiction only until a ward turns 25. Certainly he meets all of its requirements.  He has been found to be "a person described in Section 602" — i.e., a person who "violate[d] a[] law" when he was "between 12 years of age and 17 years of age . . . ."  (§ 602, subd. (a).)  He committed 707(b) offenses — robbery, kidnapping for purposes of robbery, and forcible sex offenses.  (§ 707, subds. (b)(3)-(b)(5), (b)(7), (b)(10).)  Finally, in adult court, he would be facing a sentence of seven years or more — in fact, he was sentenced to life.

The juvenile court ruled, however, that defendant comes within an exception created by subdivision (h)(2).  It viewed subdivision (h)(2) as independent of subdivision (h)(1).  Subdivision (h)(1) applies only to "a person who is committed by the juvenile court to the Department of Corrections and Rehabilitation, Division of Juvenile Justice, on or after July 1, 2018, and who is found to be a person described in Section 602 by reason of the commission of an offense listed in . . . [707(b)] . . . ."  By contrast, subdivision (h)(2) has no such prefatory qualification.  The juvenile court concluded that, unlike subdivision (h)(1), subdivision (h)(2) is not limited to a person committed to the DJJ.

10

We disagree, for six reasons.

First, the structure of section 607 shows what the Legislature intended.

Subdivisions (a), (b), (c), and (d) are primarily *jurisdictional* provisions. Subdivision (a) starts by setting up a presumption that jurisdiction terminates at 21. It makes an exception for subdivision (b), which allows the juvenile court to exercise jurisdiction over wards who have committed 707(b) offenses until they are 23. It also makes an exception for subdivision (c), which allows the juvenile court to exercise jurisdiction over wards who have committed offenses that would entail a sentence in adult court of seven years or more until they are 25. Each of these subdivisions limits jurisdiction strictly by age; they do not provide for any extended period of control.

Subdivisions (g), (h)(1), and (h)(2) are primarily *discharge* provisions. Subdivision (g) and subdivision (h)(1) are substantially similar. They both apply only to wards committed to the DJJ; subdivision (g) applies only to wards committed between July 1, 2012 and June 30, 2018, whereas subdivision (h)(1) applies only to wards committed after June 30, 2018. Subdivision (h)(2), by contrast, is not *expressly* limited to a ward committed to the DJJ. Each of these subdivisions provides for a two-year period of control, which may extend beyond the age limits in subdivisions (a), (b), and (c). None of them, however, gives the juvenile court any *jurisdiction*.

Of course, there is a *relationship* between jurisdiction and discharge. Subdivision (d) ties the two together by ensuring that the juvenile court continues to have *jurisdiction* until the ward is *discharged*. To repeat, it provides: "The court shall not discharge a

11

person from its jurisdiction who has been committed to the [DJJ] while the person remains under the jurisdiction of the [DJJ] . . . ." It is an express exception to subdivision (a). Thus, it gives the juvenile court jurisdiction during any extended period of control under subdivisions (g) and (h)(1). As amicus the California State Association of Counties (Association) points out, "This concurrent jurisdiction allows the juvenile court to vacate or modify an order committing a person to [the] DJJ, if, for example, it finds that the person is not safe or is not being provided adequate rehabilitative, educational, or other needed services. [Citation.]"

Significantly, subdivision (d) confers jurisdiction only if a ward is committed to the DJJ. Even assuming subdivision (h)(2) is really a standalone provision, it is still merely a discharge provision. The juvenile court has jurisdiction under subdivision (h)(2), if at all, only through subdivision (d), and subdivision (d) requires a DJJ commitment.

Second, under the juvenile court's interpretation, subdivision (c) and subdivision (h)(2) would almost entirely overlap, yet they prescribe different outcomes. Subdivision (c) applies to a ward who *both* committed a 707(b) offense *and* who would be subject to an adult sentence of seven years or more. In the juvenile court's eyes, subdivision (h)(2) applies to *any* ward who would be subject to an adult sentence of seven years or more. On that view, every ward who comes under subdivision (c) would also come under subdivision (h)(2) and thus would be subject to a two-year period of control. Then why have subdivision (c) at all? "'As [our Supreme Court has] stressed in the past,

12

interpretations that render statutory terms meaningless as surplusage are to be avoided.' [Citation.]" (*People v. Fuentes* (2022) 78 Cal.App.5th 670, 679, pet. for rev. filed Jun. 14, 2022.)

Third, subdivision (h)(3) demonstrates that *both* subdivision (h)(1) *and* subdivision (h)(2) apply only to a ward committed to the DJJ. As noted, it provides: "This subdivision does not apply to a person who is committed to the [DJJ] . . . by a court prior to July 1, 2018, as described in subdivision (g)." It does not carve out *non-DJJ* commitments prior to July 1, 2018. Thus, if subdivision (h)(2) applied to non-DJJ commitments, then wards given *non-DJJ commitments* before July 1, 2018 would be subject to a two-year period of control, but wards given *DJJ commitments* before July 1, 2018 would not. (See also subd. (j).) This would be absurd.

Fourth, at the Association's request, we have considered the legislative history of subdivision (h). When statutory language is ambiguous, we may look to its legislative history. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.) Certainly subdivision (h)(2) is sufficiently ambiguous for us to do so here.

"We have often found enrolled bill reports to be '"instructive"' as to the Legislature's intent, purpose, and understanding in enacting a statute . . . .' [Citation.]" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1111, fn. 3.) Subdivision (h) was originally added (as then-subdivision (g)) by Assembly Bill No. 1812 (2017-2018 Reg. Sess.), effective June 27, 2018. (Stats. 2018, ch. 36, § 30, p. 1435.) According to the enrolled bill report by the Department of Corrections and Rehabilitation: "AB 1812 requires *a person who is*

13

*committed to the* [*DJJ*] on or after July 1, 2018, for specified offenses and who, at the time of adjudication would have been eligible for transfer to a court of criminal jurisdiction and who was adjudicated of a crime or crimes that, in criminal court, would have carried a maximum possible sentence of 7 years of more, to be discharged upon the expiration of *a two year period of control, or when he or she attains 25 years of age, whichever occurs later . . . .*" (Cal. Dept. of Corrections and Rehabilitation, Enrolled Bill Rep. on Assem. Bill No. 1812 (2017–2018 Reg. Sess.) prepared for Governor Brown (June 20, 2018) p. 7, italics added.) In other words, it read now-subdivision (h)(2) as subject to all of the requirements of now-subdivision (h)(1), including the requirement that the ward must be committed to the DJJ.

Fifth, section 875, enacted as part of realignment, provides that the juvenile court can commit a minor who has committed a 707(b) offense to an SYTF. (§ 875, subd. (a).) As relevant here, it further provides: "[I]f the ward has been committed to a secure youth treatment facility based on adjudication for an offense or offenses for which the ward, if convicted in adult criminal court, would face an aggregate sentence of seven or more years, the ward shall not be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later." (§ 875, subd. (c)(1)(A).) Thus, section 875, subdivision (c)(1)(A) essentially mirrors subdivision (h)(2), except that it substitutes an SYTF for the DJJ. However, it *expressly* requires an SYTF commitment. Evidently the Legislature understood subdivision (h)(2) to *implicitly* require a DJJ commitment.

14

Sixth, according to the leading treatise, subdivision (h)(2) requires a DJJ commitment: "With one exception, a ward committed to the DJJ for an offense listed in Welf & I C § 707(b) or Pen C § 290.008(c) must be discharged on the expiration of a 2-year period of control or when the ward attains 23 years of age, whichever occurs later. Welf & I C § 607(h)(1). The exception is that *a ward committed to the DJJ* for an offense that would be punishable by 7 years or more for an adult may be held until age 25 or until expiration of a 2-year period of control, whichever occurs later. Welf & I C §§ 607(h)(2) . . . ." (Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2022) Juvenile Delinquency Proceedings, § 56.65, italics added.)

The juvenile court based its ruling on a footnote in *People v. Hwang* (2021) 60 Cal.App.5th 358 (*Hwang*), review granted Apr. 14, 2021 (S267274). In *Hwang*, in 2001, a defendant who had been 15 at the time of the crimes was prosecuted, convicted, and sentenced in adult court. (*Id*. at p. 361.) In 2018, the Department of Corrections and Rehabilitation recommended that the sentence be recalled and that the defendant be resentenced, because his sentence was unlawful under a 2009 case. (*Id*. at p. 362.) The defendant then requested a transfer hearing, pursuant to Proposition 57. The trial court denied the request and imposed a modified adult sentence. (*Ibid*.)

The appellate court held that both Proposition 57 and SB 1391 applied retroactively to all judgments not yet final when they went into effect. (*Hwang*, *supra*, 60 Cal.App.5th at pp. 364-366.) "That this defendant is now over 25 years old does not change our conclusion . . . ." (*Id*. at p. 365.) It further held that the recall and

15

resentencing reopened the finality of the judgment.  (*Id*. at pp. 366-367.)  It concluded:

"The appropriate remedy is a remand to the trial court with directions for the matter to be

transferred to the juvenile court for a juvenile adjudication.  [Citation.]"  (*Id*. at p. 367.)

In the footnote, it commented:  "We observe that our opinion does not require

defendant's *automatic* release from custody.  Under Welfare and Institutions Code

section 607, subdivision ([h])(2), 'A person who, at the time of adjudication of a crime or

crimes, would, in criminal court, have faced an aggregate sentence of seven years or

more, shall be discharged upon the expiration of a two-year period of control, or when

the person attains 25 years of age, whichever occurs later, unless an order for further

detention has been made by the committing court pursuant to Article 6 (commencing

with [Welfare and Institutions Code s]ection 1800) of Chapter 1 of Division 2.5.'

Welfare and Institutions Code section 1800, subdivision (a) permits the Director of the

Division of Juvenile Justice to ask a prosecuting attorney to file a petition for a person

who 'would be physically dangerous to the public because of the person's mental or

physical deficiency, disorder, or abnormality that causes the person to have serious

difficulty controlling his or her dangerous behavior.'  [Citation.]"  (*Hwang*, *supra*, 60

Cal.App.5th at p. 367, fn. 6.)

Thus, the *Hwang* court seems to have believed that the juvenile court could still

exercise jurisdiction over the approximately 33-year-old defendant under subdivision

(h)(2), and moreover that it could order him held beyond his discharge date under section

1800.  This was dictum.  The court's *holding* did not turn on whether the defendant was

16

entitled to automatic release. Beyond citing subdivision (h)(2) and section 1800, the court provided no analysis for its conclusions.

For the reasons already discussed, we respectfully disagree with the dictum in *Hwang*.

C. *The Effect of the DJJ Commitment*.

The People do not rely on *Hwang*. In fact, they all but concede that the trial court's reasoning was erroneous: "[T]he prefatory language of subdivision (h)(1) is relevant and likely applicable to subdivision (h)(2) as well . . . ."

The People argue, however, that defendant *was* committed to the DJJ (even though the DJJ rejected the commitment and the juvenile court then vacated it). Defendant and Probation respond that the juvenile court lacked jurisdiction to make the DJJ commitment.

The provisions for a two-year period of control, in subdivisions (g), (h)(1), and (h)(2), tee up the question: Two years from when? Subdivisions (g) and (h)(1) expressly apply only to a ward who is committed to the DJJ. As we have already held, subdivision (h)(2) must be construed as likewise applying only to a ward who is committed to the DJJ. The only reasonable construction of all three subdivisions is that the period of control begins when the DJJ commitment begins.

As part of realignment, section 607 has been amended, effective June 30, 2022, so as to provide that the juvenile court has jurisdiction over a ward who has committed a 707(b) offense until the ward turns either 23 or 25, "or two years from the date of

17

commitment to a secure youth treatment facility . . . , whichever occurs later . . . ." (Current subds. (b), (c).) This confirms our understanding that all two-year periods of control begin on the date of the commitment.

The People argue that, as subdivision (c) is a jurisdictional provision, this amendment means "that jurisdiction was established . . . by the juvenile court's commitment of J.A. to Pathways, an SYTF, and that the juvenile court may retain jurisdiction over J.A. for two years from the date of commitment to Pathways."[6] As Probation points out, however, the amendment added the same language to subdivision (b). Aside from age, all offenders who fall under subdivision (c) also fall under subdivision (b). Thus, if this language were a springing source of jurisdiction, regardless of age, there would be no need to add it separately to each subdivision.

Actually, this just highlights the bootstrapping nature of the People's argument. Yes, the amendment clarifies that, once a juvenile court makes a commitment to an SYTF, it can "retain jurisdiction" for two years. But it does not give the juvenile court jurisdiction to make a commitment to SYTF in the first place. The source of that jurisdiction must be found elsewhere. And as to J.A., we do not find it anywhere.

Yet again, the overall scheme of section 607 is clear: A DJJ commitment must be made while the juvenile court has jurisdiction of the ward because the ward is under 21, 23, or 25, under subdivision (a), (b), or (c), respectively. Once a DJJ (or SYTF)

---

[6] Defendant and Probation contend that the amendment is not retroactive and that, if it is retroactive, it is unconstitutionally ex post facto. We need not decide these questions. We assume it can validly be applied to defendant.

18

commitment is made, the two-year period of control begins, and it may continue beyond the age of 21, 23, or 25, as the case may be; the juvenile court retains jurisdiction during this extended period under subdivision (d). If the juvenile court does not have jurisdiction to make a valid DJJ (or SYTF) commitment, a two-year period of control can never begin.

By reading subdivision (h)(2) as a "standalone" provision, the trial court was grasping at the only straw that would even arguably support it committing defendant to the DJJ. However, subdivision (h)(2) is operative only after a DJJ commitment has already been made; it does not give a juvenile court jurisdiction to order the commitment. In sum, the juvenile court had no authority to commit a 40-year-old to the DJJ.

III

DISPOSITION

Let a petition for writ of mandate issue directing respondent superior court to vacate defendant's commitment to Pathways and to dismiss the case. Our stay order is vacated.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.

MILLER
J.

19